UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TALBOT CURTIN,
    Petitioner

vs.                           CIVIL NO. 1:CV-14-1182

WARDEN DAVID J. EBBERT,
    Respondent                    (Judge Caldwell)

*M E M O R A N D U M*

I. *Introduction*

        Talbot Curtin, an inmate confined at the United States Penitentiary in Canaan, Pennsylvania, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges a prison disciplinary proceeding where he was found guilty of receiving money from another inmate. The other inmate had arranged for a friend of his to put $100 in Petitioner's prison account. Petitioner was sanctioned with the loss of thirteen days' good conduct time.

        Petitioner makes the following claims: (1) he is actually innocent of the offense because he did not participate in, or have knowledge of, the transaction; (2) Petitioner did not receive the incident report within twenty-four hours of the staff's becoming aware of the incident; (3) the charge should have been handled by the Unit Discipline Committee (UDC) but was instead improperly referred to the Discipline Hearing Officer (DHO); (4) an "Investigation Hold" was improperly placed on $100 in Petitioner's

prison account; (5) Petitioner is being treated differently than other inmates because other inmates received lesser sanctions for the same offense; and (6) the privacy rights of the friend of the other inmate were violated when that person's name and e-mail address were used in the incident report and the DHO report.

In part, Respondent opposes the petition by arguing that Petitioner has failed to exhaust his administrative remedies and because some evidence supports the conclusion of the DHO that Petitioner committed the offense charged.

II.   *Background*

In an incident report dated December 3, 2013, Petitioner was charged with "accepting money from another inmate," a violation of Code 328. (Doc. 11-1, ECF p. 9). Code 328 prohibits an inmate from "[g]iving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization." (Bureau of Prisons (BOP) Program Statement 5270.09, p. 51). The reporting officer described the incident as follows:

> On December 3, 2013 at approximately 10:00 a.m., the SIS office conducted a review of inmate Trust Fund transactions. This review revealed that inmate [redacted] used his e-mail account to instruct his approved visitor to place a total of $100.00 on the trust fund account of inmate CURTIN, TALBOT, #02077-049. This was determined by the following information.
>
> On July 23, 2013, at 6:36 p.m., inmate [redacted] wrote an e-mail to [his approved visitor]. In the body of the e-mail, inmate [redacted] instructed [the approved visitor] to place $100.00 on the trust fund account of inmate CURTIN. On July 23, 2013, at 9:05 pm, inmate CURTIN, TALBOT, #02077-049

> received $100.00 deposited via Western Union, from [the
> approved visitor]. Visiting Records show [redacted] is an
> approved visitor of inmate [redacted].

(Doc. 1-2, ECF p. 5; Doc. 11-1, ECF p. 9). Petitioner said "No comment" to the investigating officer when offered an opportunity to speak. (Doc. 11-1, ECF p. 10). The incident report was referred to the UDC for further disposition. (*Id.*). A correctional counselor, acting as a one-member UDC, referred the report to the DHO for further hearing. (*Id.*, ECF p. 14). Petitioner also said he had no comment when he was before the UDC. (*Id.*).

On December 10, 2013, the DHO hearing was held. According to the DHO, Petitioner "elected to make the following allocution on his behalf before the DHO": "Yeah, he sent me the money." (Doc. 11-1. ECF p. 18). The DHO made the following findings of fact:

> The DHO finds based on some facts that on July 23, 2013,
> CURTIN received money from a third party agent at email
> [redacted] on behalf of another inmate. Further the other
> inmate used the TRULINCS (or Trust Fund Limited Inmate
> Computer System) to orchestrate the deposit.

(Doc. 11-1, ECF p. 19). As additional findings, the DHO then quoted the language from the incident report, which we have just quoted above. The DHO also relied on "CURTIN's verbal admittance to the DHO 'Yeah, he sent me the money.'" (*Id.*). The DHO concluded his fact finding with:

> The DHO considered all evidence and has drawn the
> conclusion based on some facts the prohibited act of
> Giving/Receiving Money or Anything of Value to/from Another

3

>
> Inmate, or any Person without Staff Authorization (Code 328) was committed.

(Id.). The DHO then imposed the following sanctions: disallowance of thirteen days' good conduct time, thirty days' disciplinary segregation, ten months' loss of commissary, telephone and visiting privileges, and one month's loss of recreation privileges. (*Id.*, ECF p. 20).

> As part of his reasons for the sanctions, the DHO stated:
>
> The DHO considered CURTIN admitted responsibility for his actions. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior. The DHO will note for the record this inmate presents an extensive disciplinary history to include prior interactions for assault, use of illicit substances, possession of dangerous weapons, gambling, possession of unauthorized items, as well as demonstrates a continued inability to abide by institution rule. Chronic misconduct is corrosive towards correctional objectives which cannot and will not be tolerated.

(*Id.*, p. 20).

Petitioner filed an appeal with the BOP's regional director. In part, Petitioner asserted that he was "actually innocent" of the charge because it was the other inmate who wrote the e-mail; Petitioner did not write an e-mail nor did he make a phone call. He "did not do anything" and "[i]n fact . . . did not want to do any business with" the other inmate. Petitioner claimed he was being punished for the actions of the other inmate. (Doc. 1-2, ECF p. 9). On January 29, 2014, the regional director denied the appeal, noting that Petitioner did "not challenge the DHO's decision that you committed the prohibited act." (Doc. 1-2, ECF p. 10).

4

Petitioner alleges he took an appeal to the BOP's Central Office in mid-February through the regular mail from the SHU (segregated housing unit).  (Doc. 1-2, Curtin penalty-of-perjury declaration ¶ 11).  Petitioner later asked the members of his unit team several times about the status of his appeal and then on May 5, 2014, submitted a written request-to-staff form about the status of his appeal.  (*Id.* ¶ 12).  On May 14, 2014, he was informed that "[t]here is no record of the Central Office receiving your appeal . . . ."  (Doc. 1-2, Ex. F).  Petitioner alleges that "because of Canaan's SHU not following the Bureau/Court's legal mail procedures, that I do not have my Central Office Appeal on file, I do not have the response, nor do I have the memorandum because I mailed it from SHU in the general mail without being able to copy any of it."  (Doc. 1-2, ECF p. 3, ¶ 14).  Respondent has submitted records confirming that there is no record of an appeal from Petitioner to the Central Office.  (Doc. 11-1, FiggsGanter penalty-of-perjury declaration ¶ 9; Doc. 11-1, ECF p. 8).

III.   *Discussion*

Petitioner's main argument is that he is actually innocent of the disciplinary offense because he did not know about, or participate in, the transaction that put $100 into his prison account.  This is essentially an argument that the BOP failed to show some evidence to support the Code 328 charge.  In prison disciplinary proceedings, due process requires that there be some evidence to support the charge.  *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013).  Petitioner cites in support *Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007).  In *Teague*, the Fifth Circuit held that the

"some evidence" standard of review had not been met on a substantively similar disciplinary offense when prison authorities had failed to show the charged inmate's "knowledge of or participation in" the deposit. *Id.* at 780.

However, before we can reach the merits of the petition, we must address Respondent's exhaustion argument. "Generally, prisoners must exhaust their administrative remedies prior to bringing habeas claims under 28 U.S.C. § 2241." *Guerrero v. Recktenwald*, 542 F. App'x 161, 163 (3d Cir. 2013)(nonprecedential)(citing *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 760 (3d Cir. 1996)). Here, Petitioner had available the BOP's administrative remedy program at 28 C.F.R Part 542 to appeal the DHO's decision. *See* 28 C.F.R § 541.8(i). The process begins with an appeal to the regional director. *See* Program Statement 5270.09, p. 35 ("The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the discipline policy and by appeal through the Administrative Remedy program.").

There is no issue that Petitioner complied with this part of the remedy process as he appealed the DHO decision to the regional director, who denied the appeal. From there, Petitioner also had to appeal to the general counsel as the final step in the administrative remedy process. 28 C.F.R § 542.15(a). The appeal had to be taken within thirty days of the regional director's decision. *Id.* The general counsel is at the Central Office level. See 28 C.F.R § 542.11(a).

Here, both sides agree that the review by the general counsel never took place. Petitioner blames this on the BOP because he had to rely on the regular mail to

send his appeal to the Central Office. He implies that this should excuse exhaustion. We disagree. The administrative remedy process had one other avenue he should have tried. Under section 542.15(a), the time limits for an appeal may be extended "when there is a valid reason for delay" as described in section 542.14(b). *Id.* A "valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame." 28 C.F.R § 542.14(b). Petitioner could have submitted another appeal to the general counsel arguing that there was a valid reason for delay because he had attempted to submit a timely appeal but circumstances had prevented him from doing so.

Petitioner has therefore failed to exhaust his administrative remedies. This failure constitutes a procedural default, *Moscato*, *supra*, 98 F.3d at 760, and would bar our review of the petition, *id.* at 762, unless Petitioner can show the default should be excused. Petitioner can excuse the default if he shows cause and prejudice for the default. *Id.* at 761, citing *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986).

Petitioner cannot meet the cause-and-prejudice standard because he cannot show cause for his default. To demonstrate cause for a procedural default, the petitioner must show that some objective factor external to his pursuit of his administrative remedies impeded his efforts to comply with the BOP's administrative process. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Leyva v. Williams,* 504 F.3d 357, 366 (3d Cir. 2007). There was no factor

external to Petitioner here as it was Petitioner who did not complete the administrative process.

When a habeas petition challenges a criminal conviction, a petitioner can excuse his default in another way, if he shows there has been a fundamental miscarriage of justice. *See Thomas v. Secretary, Pennsylvania Dep't of Corr.*, 495 F. App'x 200, 207 (3d Cir. 2012)(nonprecedential). It is uncertain whether the fundamental-miscarriage-of-justice exception applies to habeas petitions challenging prison disciplinary proceedings. *See Pinet v. Holt*, 316 F. App'x 169, 171 n.3 (3d Cir. 2009)(nonprecedential).[1] But even if we apply the exception, Petitioner cannot show a fundamental miscarriage of justice.

The exception requires a petitioner to show actual innocence. *Thomas*, *supra*, 495 F. App'x at 207. In the context of a habeas petition challenging a criminal conviction, to show actual innocence, "a petitioner must demonstrate two things . . . . First, a petitioner must present new, reliable evidence that was not presented at trial. *Schlup* [v. Delo], 513 U.S. [298,] 324, 115 S.Ct. [851,] 865, [130 L.Ed.2d 808 (1995]. Second, a petitioner must show by a preponderance of the evidence, "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' *Id.* at 327, 115 S.Ct. at 867." *Houck v. Stickman,* 625 F.3d 88, 93 (3d Cir. 2010). The court examines not just the new evidence but the old evidence as well. *House v. Bell,* 547 U.S. 518, 538, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006). "[A]ctual

---

[1] We note that the Seventh Circuit has applied the exception to prison disciplinary proceedings. *See Martin v. Vannatta*, 175 F. App'x 45, 46 (7th Cir. 2006)(nonprecedential).

innocence requires a showing of factual innocence, not mere legal insufficiency." *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002).

Petitioner has failed to show his actual innocence of the disciplinary offense of accepting money from another inmate because he has not produced new evidence. He does assert that no evidence was offered at the hearing to show that he knew about or participated in the transaction. However, this argument goes only to the sufficiency of the evidence on the offense, not to Petitioner's factual innocence. Even if we considered Petitioner's affirmative assertions that he wrote no e-mail or made no phone call, or that he "did not do anything," it would not qualify as new evidence. *See Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)(the petitioner's testimony exculpating himself from the crime is not new evidence when he could have testified at trial).

We will dismiss the petition for failure to exhaust administrative remedies. We will not issue a certificate of appealability since Petitioner has the right to appeal our order to the Third Circuit without a certificate. *See Burkey v. Marberry*, 556 F.3d 142, 146 (3d Cir. 2009).

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: December 18, 2014